UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THE OLIVER STORES, | ) |
| | ) |
|         Plaintiff, | ) |
| v. | )   Docket no. 1:11-cv-353-NT |
| | ) |
| JCB, INC., | ) |
| | ) |
|         Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS**

Before the Court is Defendant JCB, Inc.'s motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings as to Count Two of the Complaint, which alleges violations of Maine's Unfair Trade Practices Act. For the reasons that follow, the Court **GRANTS** Defendant's motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

As noted in earlier orders, this case arises out of the breakdown of the parties' business relationship. Defendant is a manufacturer of heavy machinery and farm equipment. Plaintiff, The Oliver Stores, had been a distributor of Defendant's machinery prior to Defendant's termination of the relationship on June 21, 2011. On September 20, 2011, the Plaintiff filed a three-count Complaint against Defendant. Count One alleged violations of the Maine Franchise Act, 10 M.R.S.A. §§ 1361-1370 (the "**MFA**"); Count Two alleged violations of the Maine Unfair Trade Practices Act, 5 M.R.S.A. §§ 205-A-214, (the "**MUTPA**"); and Count Three set forth a breach of contract claim.

On September 21, 2011, the Defendant filed an answer along with a motion to dismiss the case or stay and compel arbitration. On March 22, 2012, the Court adopted the magistrate judge's recommendation to refer the Plaintiff's breach of contract claim to arbitration and to retain jurisdiction over the MFA claim, altering only the recommendation to submit the MUTPA claim to arbitration. Order Affirming in Part the Recommended Decision (Doc. 17). The Court instead retained jurisdiction of the MUTPA claim along with the MFA claim. The Court reserved judgment on the MUTPA claim's ultimate viability because that issue had not been squarely presented to the Court. Defendant now moves for judgment on the pleadings seeking dismissal of Count Two, the Plaintiff's MUTPA claim.

## LEGAL STANDARD

"A Rule 12(c) motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss." *Perez–Acevedo v. Rivero–Cubano,* 520 F.3d 26, 29 (1st Cir. 2008). "'Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . . .'" *Id.* (quoting *R.G. Fin. Corp. v. Vergara–Nunez,* 446 F.3d 178, 182 (1st Cir. 2006)). "[T]o survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . . .'" *Perez-Acevedo,* 520 F.3d at 29 (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007)).

**DISCUSSION**

At issue before the Court is whether a commercial franchisee may bring a claim under the private remedies provision found in Section 213 of MUTPA. This question requires the Court to address the interplay between the MFA and MUTPA.

**I.     Statutory Background**

The MFA prohibits manufacturers from engaging in certain "unfair methods of competition and unfair and deceptive practices" in franchise relationships. 10 M.R.S.A. § 1363(3). Civil remedies for franchisees that have been damaged by a violation of the MFA are contained in section 1362. The MFA's civil remedies section does not provide for attorney's fees or costs incurred in connection with an MFA action. The MFA provides a two-year statute of limitations. 10 M.R.S.A. § 1369. In 1993, Maine's Legislature made significant changes to the MFA, including the enactment of a "Penalty" provision which states simply: "Violation of this chapter constitutes an unfair trade practice under the Maine Unfair Trade Practices Act, Title 5, chapter 10." 10 M.R.S.A. § 1370 (the "**MFA Penalty Section**").

MUTPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 5 M.R.S.A. § 207. MUTPA contains a "private remedies" section, which provides in pertinent part:

> Any person who purchases or leases goods, services or property, real or personal, *primarily for personal, family or household purposes* and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of

> a method, act or practice declared unlawful by section 207 or by any rule or regulation issued under section 207, subsection 2 may bring an action either in the Superior Court or District Court for actual damages, restitution and for such other equitable relief, including an injunction, as the court determines to be necessary and proper. There is a right to trial by jury in any action brought in Superior Court under this section.

5 M.R.S.A. § 213(1) (emphasis added). Section 213(2) allows the court to award reasonable attorney's fees and costs incurred with the action to a prevailing plaintiff. MUTPA does not contain a statute of limitations provision, but the Maine Law Court has applied the generic six-year statute of limitations for civil actions found at 14 M.R.S.A. § 752 to claims under MUTPA. *McKinnon v. Honeywell Intern., Inc.,* 977 A.2d 420, 424 (Me. 2009).

MUTPA also contains a state enforcement mechanism which is not found in the MFA. MUTPA empowers the State Attorney General to bring an action "to restrain by temporary or permanent injunction" an unfair trade practice. 5 M.R.S.A. §§ 209-211. As part of the state enforcement mechanism, a court may provide restitution to "any person who has suffered any ascertainable loss" due to the unfair trade practice. 5 M.R.S.A. § 209. Section 209 clearly anticipates involving the Attorney General in enforcing violations of other statutes, like the MFA, which make a violation of those statutes also a violation of MUTPA.[1] The state enforcement mechanism essentially gives the Attorney General the authority to

---

[1] "The Attorney General in seeking civil penalties has the burden of proving that the conduct was intentional and was unfair or deceptive notwithstanding any other statute which declares a violation of that statute an unfair trade practice." 5 M.R.S.A. § 209.

4

settle a case involving a MUTPA violation.² The Attorney General also is empowered to examine the books and records that might be relevant to any unfair trade practice. 5 M.R.S.A. § 211. MUTPA's Penalty Section subjects any person who fails to cooperate with the Attorney General's investigation to penalties. 5 M.R.S.A. § 212.

## II.    The Meaning of the MFA Penalty Section's Reference to MUTPA

The Plaintiff contends that the MFA Penalty Section signals the Legislature's intent to open Section 213's private remedies to franchisees. The Plaintiff cites *Fitzpatrick v. Teleflex, Inc.*, 763 F. Supp. 2d 224 (D. Me. 2011), in support. There the court stated that "[a] violation of the Franchise Laws constitutes an unfair trade practice and is actionable under the Maine Unfair Trade Practices Act, Title 5, chapter 10." *Id.* at 232. In *Fitzpatrick*, the question before the court was whether a plaintiff franchisee could maintain an action against the defendant franchisor under MUTPA's six-year statute of limitations, or whether its claims were foreclosed by the MFA's two-year statute of limitations. The Court found that, because the plaintiff's action arose out of the MFA, that act's shorter limitations period applied. The defendant did not argue that the plaintiff was precluded from a remedy under Section 213 because it was a commercial entity. Although *Fitzpatrick*'s statement that the plaintiff had a cause of action under MUTPA sounds dispositive, it was not an adjudication of the question whether a commercial franchisee may bring a claim under Section 213 of MUTPA.

---

² MUTPA provides: "In any case where the Attorney General has authority to institute an action or proceeding under section 209, in lieu thereof he may accept an assurance of discontinuance of any method, act or practice in violation of this chapter . . . ." 5 M.R.S.A. § 210.

The Defendant counters that MUTPA does not provide a cause of action to the Plaintiff because the Plaintiff is a commercial entity and Section 213's "private remedies" are only available to persons who purchase or lease goods, services or property, "primarily for personal, family or household purposes." 5 M.R.S.A. § 213. The Defendant cites to *C-B Kenworth, Inc. v. General Motors Corp.*, 706 F. Supp. 952, 957 (D. Me. 1988), which found that an automobile franchisee had no private right of action under Section 213 of MUTPA. The language in *C-B Kenworth* also sounds dispositive, but since the case predated the enactment of the MFA's Penalty Section, it is of limited value.

The plain meaning of Section 213 limits private remedies to persons who purchase goods, services or property for "personal, family or household purposes." The plain meaning of MFA's Penalty Section makes a violation of the MFA a violation of MUTPA, but the section is silent as to whether the MFA was meant to incorporate all of MUTPA's provisions. The statutory history accompanying the 1993 MFA amendments contains no suggestion that the MFA was meant to alter Section 213's clear limitation to goods purchased "primarily for personal, family or household purposes" in the case of franchisees. *See* L.D. 364 (116th Legis. 1993).

When enacting a statute, the Legislature is presumed to be aware of existing law. *See In re Dustin C.*, 952 A.2d 993, 994 (Me. 2008); *Stockly v. Doil,* 870 A.2d 1208, 1213 (Me. 2005). When it enacted the MFA's Penalty Section, the Legislature must be presumed to have been aware that the "private remedies" section of MUTPA was limited to consumer actions, yet it made no changes to that statutory

section to accommodate MUTPA actions by commercial franchisees. In the face of the Legislature's failure to amend MUTPA, the Court is constrained to assume that MUTPA's Section 213 continues by its plain terms to apply only to consumers.

This conclusion is reinforced by other general canons of statutory construction. Courts must interpret statutes so as to obtain "harmony" and avoid "unreasonable or illogical" constructions. *Pinkham v. Morrill,* 622 A.2d 90, 95 (Me. 1993); *State v. Niles,* 585 A.2d 181, 182 (Me. 1990). The reference to MUTPA in MFA's Penalty Section logically adopts MUTPA's state enforcement provisions. Yet any interpretation which make MUTPA's "private remedies" section applicable to franchisees would render meaningless the words "primarily for personal, family or household purposes" within Section 213 and make the MFA's own civil remedies section superfluous.[3] Additionally, when comparing statutory provisions, the specific controls the general. *See Cumberland Farms N., Inc. v. Maine Milk Comm'n,* 428 A.2d 869, 873 (Me. 1981). The Penalty Section generally adopts and incorporates MUTPA into the MFA, whereas the specific "private remedies" provision of MUTPA plainly limits itself to consumer actions. The language of

---

[3] The Plaintiff argues that the Legislature would not have titled the Penalty Section "Penalty" if it intended only to incorporate MUTPA's public enforcement mechanisms because those mechanisms are discretionary and limited to possible restitution. The Plaintiff seems to be arguing that such an interpretation of the Penalty Section would render the word "Penalty" meaningless. This, however, ignores the fact that the act of labeling an MFA violation an unfair trade practice — even if simply for purposes of providing a basis for state action — itself constitutes a penalty. With the Penalty Section in place, any franchisor who is found to have committed an MFA violation must now contend with the fact that it is also deemed to have committed an unfair trade practice, triggering the possibility of a state investigation and prosecution. Moreover, the private remedies provided under Section 213 — damages and attorney's fees — are not considered "penalties" in MUTPA but, rather, "remedies" for consumers who have been injured by unfair trade practices. The only "penalty" referred to in MUTPA is the monetary penalty that may be imposed upon a person who fails to cooperate in a state MUTPA investigation. This reinforces the understanding that the MFA's Penalty Section refers not to any "penalty" inherent in allowing a private MUTPA action but to the penalty of automatically labeling an MFA violation a MUTPA violation.

Section 213 of MUTPA, and not the language of the MFA's Penalty Section, therefore controls the scope of actions under Section 213. For all of these reasons, the Court concludes that the Plaintiff has no private right of action against the Defendant under Section 213 of MUTPA.

The Plaintiff contends that the Maine Legislature routinely makes violations of other statutes' unfair trade practices when it wishes to level the playing field, and it argues that the Maine Legislature intended to do so for franchisees, which are often at the mercy of more powerful franchisors. Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings at 5 ("**Plaintiff's Opposition**") (Doc. 24) (citing 10 M.R.S.A. §§ 1231-1233 (dealing with manufacturers' rebates); 10 M.R.S.A. § 1496 (dealing with unsolicited telefacsimile transmissions); and 33 M.R.S.A. § 506 (dealing with undocumented mortgage agreements)). The Plaintiff argues that in none of these other laws does the Legislature "limit the right of the victim to hoping that the Attorney General's Office will step in under the UTPA and no more." Plaintiff's Opposition at 4-5.

The Maine Legislature has gone well beyond the three statutes cited by the Plaintiff. The Court found roughly fifty statutes which make a violation of the individual statute a violation of MUTPA.[4] Closer scrutiny of these laws, however,

---

[4] *See* 4 M.R.S.A. § 807-B (providers of immigration and nationality law assistance who engage in prohibited activities violate MUTPA); 9 M.R.S.A. § 5014 (Charitable Solicitations Act); 9-A M.R.S.A. § 3-507 (home solicitation sales); 9-A M.R.S.A. § 8-510 (Truth-In-Lending legislation); 9-A M.R.S.A. § 9-408 (consumer credit transactions made to acquire real estate); 10 M.R.S.A. § 1110 (price protection and pre-paid contracts); 10 M.R.S.A. § 1193 (motor vehicle dealers); 10 M.R.S.A. § 1377 (Self-Service Storage Act violations involving failure to protect personal information); 10 M.R.S.A. § 1406 (manufactured housing warranties); 10 M.R.S.A. § 1477 (used cars); 10 M.R.S.A. § 1483 (insulation contractors); 10 M.R.S.A. § 1490 (home construction contracts); 10 M.R.S.A. § 1494 (warranties for sale and installation of solar energy equipment); 10 M.R.S.A. § 1496-C (Cellular

does not reveal the pattern that the Plaintiff hopes to establish.[5] Most, but not all of these laws, relate to consumers. Some protect consumers from franchisees. Some protect businesses or license holders. Some contain independent private remedies in addition to MUTPA violation. Others make reference to actions by the Attorney General. There are simply too many variations to allow the Court to draw the

---

Telephone Customer Privacy Act); 10 M.R.S.A. § 1497 (e-mail solicitation); 10 M.R.S.A. § 1498 (telephone solicitation); 10 M.R.S.A. § 9100 (regulation of mobile home parks); 11 M.R.S.A. § 2-316 (retail sales of consumer goods and services); 17 M.R.S.A. § 2305 (multi-level distributorships); 20-A M.R.S.A. § 9503 (private business, trade and technical schools); 22 M.R.S.A. § 1555-C (delivery sales of premium cigars); 22 M.R.S.A. § 1555-D (tobacco products); 22 M.R.S.A. § 1711-E (confidentiality of prescription drug information); 22 M.R.S.A. § 2500-A (menu labeling for chain restaurants); 22 M.R.S.A. § 2693 (emergency drug pricing); 22 M.R.S.A. § 2697 (profiteering in prescription drugs); 22 M.R.S.A. § 2700-A (prescription drug advertising); 24-A M.R.S.A. § 6814 (Viatical and Life Settlements Act); 25 M.R.S.A. § 3702-C (solicitation by law enforcement officers); 28-A M.R.S.A. § 1407 (wholesale licensees for liquor sales); 29-A M.R.S.A. § 903 (applications for motor vehicle dealers); 29-A M.R.S.A. § 953-A (document fees on motor vehicles); 29-A M.R.S.A. § 1754 (inspection by dealers and transporters); 29-A M.R.S.A. § 2106 (tampering with odometer); 30-A M.R.S.A. § 3010 (consumer rights and protection relating to cable television service); 30-A M.R.S.A. § 3692-93 (pawnbrokers); 32 M.R.S.A. § 1406 (grave markers); 32 M.R.S.A. § 1726 (labeling of plastic containers); 32 M.R.S.A. § 4670 (consumer solicitation sales); 32 M.R.S.A. § 4700 (regulations of the sale of business opportunities); § 32 M.R.S.A. § 14251 (schools of barbering and cosmetology); 32 M.R.S.A. § 14512 (door to door home repair); 32 M.R.S.A. § 14713 (door to door sales of consumer merchandise); 32 M.R.S.A. § 17305 (hearing aid sales); 33 M.R.S.A. § 1976 (agreements to locate property).

[5] An examination of just the three statutes cited by the plaintiff suggests some of the differences in these statutes. The manufacturers' rebates law covers only consumers who purchase consumer goods, so it is clear that the impediment to utilizing section 213 of MUTPA faced by franchisees would not apply to victims of manufacturer rebate violations. The manufacturers' rebate law contains a "violation" section which provides that if a court finds a violation, it shall award an amount not less than $100. 10 M.R.S.A. § 1233. The violation section also indicates that a violation of the manufacturers' rebates law constitutes a violation of MUTPA. *Id.*

The undocumented mortgage law provides in total: "In a residential mortgage loan closing, a buyer, seller or settlement agent may not knowingly be a party to a financial or other arrangement not reflected in the loan settlement statement if the effect of that arrangement is to substantially overstate the contract sales price. Any violation of this section constitutes a violation of the Maine Unfair Trade Practices Act." 33 M.R.S.A. § 506. This law apparently protects the mortgage holder from side deals. There is no private remedy section in undocumented mortgage agreements law. It may be that the reference to MUTPA in this law was intended to allow investigation by the Attorney General.

The unsolicited telefacsimile transmissions statute prohibits any person from sending an unsolicited fax for the purpose of seeking charitable contributions or to sell goods and services. A violation constitutes an unfair trade practice. The fax statute contains no private remedy section. The fax law does not limit its application to consumers, but how a victim of this law would proceed under section 213 is unclear. For one, the victim would have to suffer some loss. Once again, it seems as likely that the Legislature was intending to draw the attention of the Attorney General as it was intending to provide a private remedy.

conclusion that when the Legislature refers to MUTPA it means to provide the private remedies associated with Section 213. The statutes have to be looked at on a case-by-case basis. And in this case, it does not make sense to incorporate MUTPA's private remedy section into the MFA.

The Plaintiff argues that, even if it does not have a cause of action under Section 213 of MUTPA, it has still articulated a cause of action under Count Two because this count requests not only damages and attorney's fees (remedies provided for solely under Section 213) but also a declaration from the Court that the Defendant has violated MUTPA. The Plaintiff gains nothing by this argument. Under both the state and federal Declaratory Judgment Acts, a court will only undertake to declare the rights of the parties where some relief would thereby be provided. *See Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 537 (1st Cir. 1995) (under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the litigant must show either that declaratory relief would confer a benefit or that refusing declaratory relief would impose a hardship); *Perry v. Hartford Acc. and Indem. Co.,* 481 A.2d 133, 136 (Me. 1984) (in determining whether to entertain an action for relief under Maine's Declaratory Judgment Act, 14 M.R.S.A. §§ 5951-5963, the court should consider whether the adjudication will serve some useful purpose).

Should the Court or a jury ultimately find that the Defendant violated the MFA, the Court's further declaration that this constitutes a violation of MUTPA would not be an adjudication of any sort, but would merely repeat the language of

10 M.R.S.A. § 1370. Because it decides nothing and adds nothing to the Plaintiff's case, such a declaration would not provide the Plaintiff with any relief.

## CONCLUSION

For the reasons stated, Defendant's motion for judgment on the pleadings is **GRANTED**. Count Two of the Complaint, for violations of Maine's Unfair Trade Practices Act, is **DISMISSED**.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 5th day of October, 2012.